**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

JOHN SIKKING, et al.                              Case No. 8:26-cv-02159-PX
　　　*Plaintiffs*

vs.

VANGUARD PARKING SOLUTIONS, INC., et al.
　　　*Defendants*

_____/

**DEFENDANT VANGUARD PARKING SOLUTIONS, INC.'S MOTION TO COMPEL**
**ARBITRATION AND STAY PROCEEDINGS**

Defendant Vanguard Parking Solutions Inc. ("Vanguard") moves under sections 3 and 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. sections 3-4, to compel Plaintiffs John Sikking and Robyn Jeter to arbitrate their claims against Vanguard on an individual basis and to stay this action as to Vanguard pending arbitration.

**INTRODUCTION**

This case is about the legal consequences of Plaintiffs' parking at private parking facilities monitored by Vanguard and, as to Mr. Sikking, his later online payment of parking notices through Vanguard's payparkingnotice.com portal. Those are the same transactions that created the arbitration agreements. The parking facilities at which both Plaintiffs elected to park displayed written Parking Agreements advising drivers that they were entering private property, that entering and parking constituted agreement to the posted terms, that any driver who did not consent had to exit, and that disputes with Vanguard would be resolved by binding arbitration rather than in court. Neither driver exercised their option to leave the facility, instead parking their respective vehicles there and leaving them, thus binding them to the terms displayed on the signage. Mr. Sikking

separately assented online when he searched for his notices and paid two tickets by card; the portal required agreement to Vanguard's Terms of Service, which contained an arbitration clause, before payment could be submitted.

Plaintiffs' Complaint confirms the core facts supporting enforcement of the arbitration agreement. It reproduces the relevant signage containing that clause at both 6831 Wisconsin Avenue and 275 West Street, alleges that Plaintiffs parked at those facilities, alleges that Vanguard sent the parking notices arising from those parking sessions, and alleges claims that arise directly from the signage, monitoring, license-plate capture, notices, payment demands, disputes, and collection activity addressed in the Parking Agreements. Compl. ¶¶ 15-35. The FAA requires enforcement of those arbitration agreements according to their terms.

The most analogous federal decision now available points the same way. In *Brant v. Parking Revenue Recovery Services, Inc.*, another putative parking-notice class action, the District of Colorado granted a motion to compel arbitration based on posted parking-lot signs. The court rejected the same type of objections Plaintiffs plead here - that the signs were not actually seen, were poorly located, or should have been accompanied by a gate, stop sign, or click-through - and held that drivers entered into valid arbitration agreements when they parked. *See Brant v. Parking Revenue Recovery Servs., Inc.*, No. 1:25-cv-01771-GPG-NRN, ECF No. 36, at 17-20 (D. Colo. Apr. 14, 2026).

For the reasons below, the Court should compel Plaintiffs to arbitrate their claims against Vanguard individually and stay this action as to Vanguard pending arbitration.

**FACTUAL BACKGROUND**

*The posted Parking Agreements*

1.      Vanguard provides parking-enforcement and notice-administration services for private parking facilities, including the facilities at issue here: the garage at or near 6831 Wisconsin Avenue in Chevy Chase/Bethesda, Maryland (the facility associated with Mr. Sikking's notices), and the garage at 275 West Street in Annapolis, Maryland (the facility associated with Ms. Jeter's notice). Goldman Decl. ¶¶ 3-6, Attached hereto as **Exhibit 1**.

2.      The Complaint itself attaches and quotes the posted Parking Agreement at the 6831 Wisconsin facility. The top of the sign states: "PARKING CONTRACT - PRIVATE PROPERTY" and, in large type, "IF YOU DO NOT CONSENT TO THIS CONTRACT, EXIT NOW." Compl. ¶ 16.

3.      The sign states that by parking, the driver agrees to the terms of the contract with Vanguard, the owner, and the parking operator, and that Vanguard records activity at the facility using video-recording equipment. *Id.*; Goldman Decl. ¶¶ 7-9.

4.      The 6831 Wisconsin sign also places arbitration and class-waiver terms on the face of the sign. It states: "ARBITRATION: Unresolved disputes shall be resolved through binding arbitration." It further states that "Vanguard and you waive their rights to jury trial and you agree that you may not bring a claim as part of a class action." Compl. ¶ 16; Goldman Decl. ¶ 9.

5.      The full Parking Agreement made available through the sign confirms the same arbitration obligation. It provides that, except as otherwise required by applicable law, "any and all disputes, claims or controversies between you and Vanguard arising from parking at the Facility or under this Contract, which are not amicably resolved, shall be settled through binding arbitration

Page 3 of 12

administered by the AAA under its Consumer Arbitration Rules," and that the FAA applies. Goldman Decl. ¶ 10.

6.      The Complaint likewise attaches the posted Parking Agreement at 275 West Street. That sign is titled "PARKING AGREEMENT." Compl. ¶ 28. It states: "By entering and parking in this parking facility, you agree to the terms and conditions of this Parking Agreement" and further states that if the driver does not consent, the driver "must exit this parking facility and park in a different location not associated with the Owner and Vanguard." *Id.*; Goldman Decl. ¶¶ 11-13.

7.      The 275 West Street sign contains a "NOTICE OF ARBITRATION" providing that "[a]ny dispute or controversy arising under or in connection with this Agreement, other than injunctive relief, shall be settled exclusively by arbitration" before an arbitrator in Palm Beach County, Florida, or the county and state where the parking facility is located, governed by the FAA and the rules of the American Arbitration Association. Compl. ¶ 28; Goldman Decl. ¶ 13.

8.      Ms. Jeter parked at 275 West Street in Annapolis, Maryland on June 7, 2025. Compl. paragraphs 32-35; Goldman Decl. ¶¶ 25-28.

9.      Vanguard's records identify the related ticket as 61087 for Maryland plate 9DD8007. Goldman Decl. ¶ 29.

10.      The posted 275 West Street Parking Agreement states that a driver accepts by entering and parking, requires a non-consenting driver to exit, and contains the "NOTICE OF ARBITRATION" quoted above. Compl. ¶ 28; Goldman Decl. ¶¶ 11-13.

*Mr. Sikking separately accepted the online Terms of Service*

11.     Mr. Sikking parked at the 6831 Wisconsin facility on February 11, 2025 and February 18, 2025. Compl. ¶¶ 20-23; Goldman Decl. ¶ 22.

12.     Vanguard's records identify the related tickets as 5C27A and 74CE2 for Maryland plate 4DL2547. Goldman Decl. ¶ 23.

13.     After Vanguard issued notices for those parking sessions, Mr. Sikking paid both tickets online by card through payparkingnotice.com on February 19, 2025. Goldman Decl. ¶¶ 23.

14.     Vanguard's payment portal required two assent steps before payment could be completed.

15.     *First*, a user who wants to view a notice on payparkingnotice.com must enter either a license plate and state or a ticket number and then press the "Search for Notice" button. Directly above that button, the portal states: "By searching, you agree to our Privacy Policy and Terms of Service," with both documents hyperlinked. Goldman Decl. ¶¶ 15-16.

16.     *Second*, to submit a card payment, the user must check an explicit agreement checkbox stating: "I agree toVanguard's Privacy Policy and Terms of Service," again with hyperlinks. The Pay button will not submit a payment unless the box is checked; if unchecked, the portal returns the error: "You must agree to the terms and conditions." Goldman Decl. ¶¶ 17-20.

17.     That payment gate was continuously present in the pay form from October 2024 through Mr. Sikking's February 19, 2025 payments. Goldman Decl. ¶ 19.

18.     Thus, Mr. Sikking could not have completed the online payments unless he first searched for his notices and then checked the agreement checkbox. *Id.* ¶¶ 23-24.

19.     The Terms of Service in effect on February 19, 2025 contained a broad arbitration provision requiring binding arbitration of disputes, claims, or controversies between the user and Vanguard regarding the terms or services, administered by the American Arbitration Association under its Consumer Arbitration Rules, and containing a jury-trial waiver and class-action waiver. Goldman Decl. ¶¶ 20-21.

## LEGAL STANDARD

Under section 2 of the FAA, a written arbitration provision in a contract involving commerce is valid, irrevocable, and enforceable except on grounds that exist at law or in equity for the revocation of any contract. 9 U.S.C. section 2. Section 4 authorizes a party aggrieved by another party's refusal to arbitrate to petition for an order compelling arbitration. 9 U.S.C. section 4. Section 3 requires the Court, upon request, to stay litigation of issues referable to arbitration. 9 U.S.C. section 3.

In the Fourth Circuit, the moving party must establish the four *Adkins* elements: a dispute, a written arbitration provision that purports to cover the dispute, a relationship to interstate commerce, and the opposing party's refusal to arbitrate. *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500-01 (4th Cir. 2002). Contract formation is governed by ordinary state-law principles, but courts place arbitration agreements on equal footing with other contracts and enforce them according to their terms. *Naimoli v. Pro-Football, Inc.*, 120 F.4th 380, 393-94 (4th Cir. 2024).

## ARGUMENT

### I. The FAA requires enforcement of the parties' arbitration agreements.

The FAA reflects a federal policy favoring arbitration agreements and requires courts to enforce written arbitration agreements according to their terms. 9 U.S.C. section 2; M*oses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). A party seeking to compel

arbitration in the Fourth Circuit must show: (1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision purporting to cover the dispute; (3) the relationship of the transaction to interstate or foreign commerce; and (4) the opposing party's failure, neglect, or refusal to arbitrate. *Adkins v. Labor Ready, Inc.,* 303 F.3d 496, 500-01 (4th Cir. 2002).

Each element is satisfied here. There is an active dispute. There are written arbitration provisions in the posted Parking Agreements and, as to Mr. Sikking, in the online Terms of Service. The transactions affect interstate commerce: Vanguard is an out-of-state parking-technology and notice-administration company; the notices and payment portal use interstate mail, electronic communications, card processing, and website systems; and Plaintiffs assert a federal DPPA claim arising from motor-vehicle-record access and use. Plaintiffs have refused to arbitrate by filing and maintaining this lawsuit in court.

Once a court finds that the dispute is subject to arbitration, section 3 requires a stay if requested. 9 U.S.C. section 3; *Smith v. Spizzirri,* 601 U.S. 472 (2024). Vanguard requests a stay pending arbitration.

**II. Maryland contract law recognizes parking lot signage as a binding contract.**

Because this case concerns Maryland parking facilities and Maryland residents, Maryland contract-formation principles govern whether the parties formed an arbitration agreement, while the FAA governs enforceability. Under Maryland law, contract formation turns on objective manifestations of assent. The essential inquiry is whether the parties manifested an intent to be bound to sufficiently definite terms. *Cochran v. Norkunas*, 398 Md. 1, 14, 919 A.2d 700, 708 (2007). A contract may be express, or it may be implied in fact from the parties' conduct and the surrounding circumstances. *Mogavero v. Silverstein,* 142 Md.App. 259, 275, 790 A.2d 43 (2002)..

The posted Parking Agreements did exactly what Maryland law requires. They identified the property as private, identified Vanguard and the parking facility, stated that entering and parking constituted agreement to the Parking Agreement, and gave drivers a clear alternative: if they did not consent, they had to exit. Compl. ¶¶ 16, 28; Goldman Decl. ¶¶ 7-13. Even based exclusively on the allegations of the Complaint, neither Plaintiff could reasonably have determined when they drove into each respective facility that they were entitled to do so for free. The surrounding circumstances facing each Plaintiff, particularly the clearly commercial nature of the facility and the posted signage discussing payment terms which Plaintiffs themselves reference in their Complaint, made it clear that they were entering private property and were thus subjecting themselves to the posted terms should they choose to leave their vehicles on someone else's property.

Plaintiffs accepted those terms, including the arbitration clause contained therein and posted on the relevant signage, by entering, parking, and using the facilities rather than exiting. The consideration was likewise plain: the owner and Vanguard granted a license to park on private property, and the driver accepted the conditions attached to that license.

Plaintiffs' anticipated argument that the signs were difficult to read or that Plaintiffs did not subjectively understand the terms does not defeat formation. Maryland applies an objective theory of contracts, meaning that a Court "[looks] at what a reasonably prudent person in the same position would have understood as to the meaning of the agreement." *Cochran v. Norkunas*, 398 Md. 1, 16-17.. The relevant question is not whether a party later claims not to have read or liked the terms, but whether Vanguard gave notice of the terms and the driver manifested assent by conduct. The Complaint's own photographs and allegations show posted terms, an express method

of acceptance, an express opportunity to reject by exiting, and Plaintiffs' use of the facilities anyway. Compl. ¶¶ 15-35.

*Brant* is directly persuasive because it enforced arbitration on materially parallel parking signage. There, as here, the plaintiffs argued lack of mutual assent and attacked the signs' location, readability, lighting, and the absence of a gate or speed bump. The court held those objections legally immaterial: 'Clearly posting signs is enough.' *Id.* at 20. The court explained that drivers 'have to ascertain the rules before locking their car and walking away,' and concluded that each plaintiff 'entered into a valid contract and arbitration agreement when they parked in the lots.' *Id.*

This case is even stronger because the Complaint itself reproduces Vanguard's posted agreements, including the acceptance language, the instruction to exit if the driver does not consent, and the arbitration provisions. Compl. ¶¶ 16, 28.

### III. The arbitration provisions cover Plaintiffs' claims.

The arbitration provisions are broad enough to cover every claim asserted against Vanguard. The 6831 Wisconsin agreement covers disputes, claims, or controversies "between you and Vanguard arising from parking at the Facility or under this Contract." Goldman Decl. ¶ 10.

The 275 West Street agreement likewise covers "[a]ny dispute or controversy arising under or in connection with this Agreement." Compl. ¶ 28; Goldman Decl. ¶13.

The online Terms cover disputes, claims, or controversies regarding the Terms or Vanguard's services. Goldman Decl. ¶ 20.

Plaintiffs' claims fall at the center of those provisions. Plaintiffs challenge Vanguard's alleged recording of license plates, access to motor-vehicle information, mailing of parking-

payment notices, statements in the notices, requested payment amounts, dispute procedures, and collection activity. Compl. ¶¶ 1-4, 19, 21-23, 31-35.

A plaintiff cannot avoid arbitration by characterizing contract-related conduct as statutory misconduct. The question is whether the claims arise out of, relate to, or are connected with the parking relationship and services governed by the agreements. They do. Any residual doubts about scope are resolved in favor of arbitration. *Moses H. Cone*, 460 U.S. at 24-25.

That conclusion is reinforced by Judge Singhal's decision in *Cicale v. Professional Parking Management Corp.*, a materially similar private-parking DPPA and parking-notice case. Judge Singhal observed that the asserted DPPA violation did not arise in a vacuum; it occurred only after the plaintiff used private parking property and failed to pay for that use. He further characterized that predicate conduct as theft and trespass, noting that the plaintiff had 'used Defendant's property and failed to pay for that use.' *Cicale v. Prof'l Parking Mgmt. Corp.*, Case No. 24-61146-CIV-SINGHAL, Order at 3 (S.D. Fla. Apr. 30, 2026)(A copy is attached hereto as **Exhibit 3**).

*Cicale* reinforces the common-sense premise that parking-notice, DMV-lookup, and collection claims arise from the parking relationship itself. That is precisely the relationship the posted Parking Agreements regulate and precisely why these claims fall within the provisions covering disputes arising from parking at the facility, under the contract, or in connection with the agreement.

**IV. Mr. Sikking also agreed to arbitrate through the payparkingnotice.com portal.**

Even apart from the posted Parking Agreement, Mr. Sikking formed an enforceable online arbitration agreement when he used payparkingnotice.com to search for and pay his notices. Courts applying Maryland law routinely enforce online agreements where the website reasonably communicates that clicking a button or checking a box constitutes assent to hyperlinked terms. *See*

*Lyles v. Chegg, Inc.*, No. RDB-19-3235, 2020 WL 1985043, at *3-*4 (D. Md. Apr. 27, 2020) (in which this Court granted a Motion to Compel Arbitration contained in a similar clickwrap agreement); *CoStar Realty Info., Inc. v. Field,* 612 F. Supp. 2d 660, 669 (D. Md. 2009) (enforcing online terms where assent was manifested through use of account after notice).

The Fourth Circuit applies the same objective notice-and-assent framework to online contract formation. *See Naimoli v. Pro-Football, Inc.*, 120 F.4th 380, 396-98 (4th Cir. 2024); *Dhruva v. CuriosityStream Inc.*, No. 24-1080, slip op. at 6-13 (4th Cir. Mar. 10, 2025).

Vanguard's portal satisfies that standard twice over. The Search page states, immediately above the Search button, that "[b]y searching, you agree to our Privacy Policy and Terms of Service." Goldman Decl. ¶ 16. The Payment page then requires an express checkbox stating: "I agree to Vanguard's Privacy Policy and Terms of Service." *Id.* ¶ 17. The Terms and Privacy Policy are hyperlinked, and the payment will not submit without the checkbox. *Id*. ¶¶ 17-20.

Mr. Sikking paid tickets 5C27A and 74CE2 online by card on February 19, 2025. *Id.* ¶¶ 23-26. The source-code history and successful Stripe charge establish that he cleared both online assent gates before payment. *Id.* ¶¶ 19, 23-26. The Terms then in effect included the arbitration agreement, jury-trial waiver, and class-action waiver. *Id.* ¶¶ 21, 27. That is a classic enforceable clickwrap agreement.

## V. This action should be stayed as to Vanguard.

As each named Plaintiff has manifested their consent to be bound to a contract with Vanguard which mandates arbitration as the sole method of resolving the disputes they now bring to this Court, the proper disposition is an order compelling Plaintiffs to arbitrate their claims

against Vanguard individually and staying this action as to Vanguard pending completion of arbitration. 9 U.S.C. sections 3-4; *Smith*, 144 S. Ct. at 1176-78.

## CONCLUSION

Vanguard respectfully requests that the Court enter an order: (1) compelling Plaintiffs John Sikking and Robyn Jeter to arbitrate their claims against Vanguard on an individual basis; (2) staying this action as to Vanguard pending completion of arbitration; and (3) granting all further relief the Court deems just and proper.

Respectfully Submitted,

By: /s/Justin M. Daniel, Esquire, (#20187)
25 Hooks Lane, Suite 210
Baltimore, Maryland 21208
(410) 547-0480
jdaniel@davidefink.com
*Attorney for Defendant Vanguard Parking Solutions, Inc.*

## CERTIFICATE OF SERVICE

I certify that on July 6 , 2026, a copy of the foregoing was filed through the Court's CM/ECF system, which will send notice to all counsel of record.

/s/Justin M. Daniel