**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

JOHN SIKKING, et al. Case No. 8:26-cv-02159-PX
*Plaintiffs*
vs.

VANGUARD PARKING SOLUTIONS, INC., et al.
*Defendants*
______________________________________________/

**DEFENDANT VANGUARD PARKING SOLUTIONS, INC.'S SUPPLEMENT TO ITS MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

Defendant Vanguard Parking Solutions, Inc. ("Vanguard"), by undersigned counsel, submits this Supplement to its Motion to Compel Arbitration and Stay Proceedings, ECF No. 15. This Supplement identifies an additional, independently sufficient basis for compelling Plaintiff Robyn Jeter to arbitrate: Ms. Jeter repeatedly used Vanguard's online portal to search for the parking notice at issue after being expressly informed that, "[b]y searching, you agree to our Privacy Policy and Terms of Service."

As the Fourth Circuit recently held, online assent does not depend on whether a website requires a separate checkbox or labels the operative button "I agree." A user objectively manifests assent when the website clearly and conspicuously advises the user that clicking a transactional button constitutes agreement to hyperlinked terms and the user nevertheless clicks that button. *Dhruva v. CuriosityStream, Inc.*, 131 F.4th 145, 152–55 (4th Cir. 2025). That is precisely what occurred here.

Vanguard therefore supplements its Motion to establish that Ms. Jeter is subject to arbitration on two independent grounds: first, because she entered and parked at the 275 West Street facility after receiving notice of the posted Parking Agreement; and second, because she

subsequently searched for her notice through Vanguard's online portal on three separate occasions after being expressly advised that searching constituted agreement to Vanguard's Terms of Service.

## RELEVANT FACTUAL BACKGROUND

Vanguard's Motion establishes that Plaintiff Robyn Jeter parked at the private parking facility located at 275 West Street in Annapolis, Maryland, on June 7, 2025. ECF No. 15 at 4; Goldman Decl. ¶¶ 25–29. Vanguard's records associate Ms. Jeter with Maryland license plate 9DD8007 and parking notice or Ticket No. 61087. Goldman Decl. ¶¶ 25, 29.

The Motion principally relied on the Parking Agreement posted at the 275 West Street facility as the basis for compelling Ms. Jeter to arbitrate. ECF No. 15 at 3–4, 7–9. The supporting declaration, however, establishes an additional basis for arbitration arising from Ms. Jeter's subsequent use of Vanguard's website.

A person seeking information about a parking notice through payparkingnotice.com must enter either a license plate and state or a ticket number and then press the "Search for Notice" button. Goldman Decl. ¶ 15. Immediately above that button, the website states: "By searching, you agree to our Privacy Policy and Terms of Service." *Id.* ¶ 16.

The phrases "Privacy Policy" and "Terms of Service" are hyperlinks through which the user may review the governing documents before conducting the search. *Id.* The notice and hyperlinks are presented on the same screen as, and directly adjacent to, the button through which the user performs the search. *Id.* & Ex. C.

Vanguard's records show that Ms. Jeter used that process to search for Ticket No. 61087 on three separate occasions: April 28, 2025, April 30, 2025, and June 25, 2025. *Id.* ¶ 27 & Ex. F. Each search therefore required Ms. Jeter to press the "Search for Notice" button after the portal

expressly advised that, "[b]y searching," she agreed to the hyperlinked Terms of Service. *Id.* ¶¶ 15–16, 27.

The Terms of Service in effect on those dates contained a written arbitration provision requiring binding arbitration of disputes, claims, or controversies between the user and Vanguard concerning the Terms or Vanguard's services. Id. ¶¶ 20–21 & Ex. E. The provision also contains a jury-trial waiver and class-action waiver. Id.

Thus, although Vanguard's records do not show that Ms. Jeter made an online card payment, id. ¶ 26, payment was not necessary to manifest assent. Ms. Jeter independently assented to the Terms of Service each time she elected to search for her notice after receiving express notice that searching constituted agreement to those Terms.

## ARGUMENT

### I. Online Assent Does Not Require a Separate Checkbox.

Maryland applies the objective theory of contracts. Contract formation turns not on a party's unexpressed subjective intent, but on what a reasonable person would understand from the parties' outward words and conduct. *Cochran v. Norkunas*, 398 Md. 1, 16–17, 919 A.2d 700, 709–10 (2007). Assent may be manifested through conduct as well as through spoken or written words. *Porter v. Gen. Boiler Casing Co.*, 284 Md. 402, 411, 396 A.2d 1090, 1095 (1979).

Those ordinary principles apply to agreements formed online. The relevant inquiry is whether the website provided clear and reasonably conspicuous notice of the proposed terms and whether the user thereafter took an action that objectively manifested assent. *Dhruva*, 131 F.4th at 151–55; *see also Marshall v. Georgetown Mem'l Hosp.*, 112 F.4th 211, 218–22 (4th Cir. 2024).

The Fourth Circuit's published decision in *Dhruva* is controlling. There, users completed a website transaction by clicking a button labeled "Sign up now." 131 F.4th at 148–49. The website

did not require the users to check a separate "I agree" box, and the operative button itself was not labeled "I accept" or "I agree." Nevertheless, the Fourth Circuit held that the users formed a binding contract containing an arbitration provision. *Id.* at 152–55.

The court explained that a button need not be labeled "I accept" or "I agree" to manifest assent. *Id.* at 154. Rather, "a clear and conspicuous notice that a click . . . will be taken as assent can do the trick." *Id.* (quoting *Marshall*, 112 F.4th at 222). Because the website informed users that completing the identified action would signify agreement to the terms, clicking the transactional button objectively manifested assent. Id. at 154–55.

The District of Maryland has applied the same notice-and-conduct analysis. *See Kemp v. Aroma360, LLC,* No. JRR-25-1630, 2026 WL 1227659 (D. Md. Apr. 24, 2026) (finding reasonable notice of online terms where a visible hyperlink appeared near the transactional button); *Lyles v. Chegg, Inc.*, No. RDB-19-3235, 2020 WL 1985043 (D. Md. Apr. 27, 2020) (enforcing arbitration agreement formed through online assent); *CoStar Realty Info., Inc. v. Field*, 612 F. Supp. 2d 660, 669–70 (D. Md. 2009) (recognizing enforceability of online terms where the user receives notice and manifests assent through use of the website or account).

These authorities foreclose any contention that an additional checkbox was indispensable. A checkbox is one method of manifesting assent, but it is not the only method. The dispositive question is whether the user was clearly informed that clicking the operative button would constitute assent and then clicked it. *Dhruva*, 131 F.4th at 154–55.

## II. Ms. Jeter Received Clear and Conspicuous Notice That Searching Constituted Agreement.

Vanguard's search page provides materially stronger notice than the notice found sufficient in *Dhruva*. The portal does not merely place a generic "Terms of Service" hyperlink somewhere

on the page. Nor does it attempt to infer agreement merely from passive browsing. Instead, immediately above the "Search for Notice" button, the portal states in direct and unambiguous language: "By searching, you agree to our Privacy Policy and Terms of Service." Goldman Decl. ¶ 16.

That sentence identifies both the conduct constituting acceptance—"searching"—and the documents to which the user agrees—the hyperlinked "Privacy Policy and Terms of Service." *Id.* The notice appears on the same screen as the search fields and immediately adjacent to the button that performs the identified action. *Id.* A user therefore receives notice of the contractual consequence at the moment the user decides whether to proceed.

This is the "clear and conspicuous notice that a click . . . will be taken as assent" that the Fourth Circuit held sufficient in *Dhruva*. 131 F.4th at 154. Indeed, the language here is more explicit than the language upheld there. In *Dhruva*, the website stated that "[b]y subscribing," the user agreed that the user had read the Terms of Use. *Id.* at 148–49. Here, the portal states directly that "[b]y searching, you agree" to the Terms of Service. Goldman Decl. ¶ 16.

The portal also presents the Terms of Service as an accessible hyperlink before the user conducts the search. *Id.* A user need not scroll through an unrelated page, navigate elsewhere, or "go exploring" to discover that contractual terms govern the transaction. See *Marshall*, 112 F.4th at 219–20. The notice, the hyperlinks, and the operative button are presented together as part of the same search process.

The portal therefore did not rely on a passive browsewrap theory under which mere use of a website is deemed acceptance of terms hidden elsewhere. It required an affirmative act—the pressing of the "Search for Notice" button—after expressly informing the user that the identified act would constitute agreement. That form of agreement is often described as a "sign-in wrap" or

"hybridwrap" agreement, but the label is immaterial. Under Maryland law and binding Fourth Circuit authority, the relevant substance is conspicuous notice followed by objective conduct manifesting assent.

## III. Ms. Jeter Objectively Manifested Assent Three Separate Times.

Vanguard's business records show that Ms. Jeter searched for Ticket No. 61087 on April 28, April 30, and June 25, 2025. Goldman Decl. ¶ 27 & Ex. F. To perform each search, she necessarily entered the relevant identifying information and pressed the "Search for Notice" button. *Id.* ¶¶ 15–16, 27.

By pressing that button after being informed that "[b]y searching, you agree" to the Terms of Service, Ms. Jeter objectively manifested assent. Her conduct is no less effective because the button was labeled "Search for Notice" rather than "I agree." *Dhruva* squarely rejects the proposition that the operative button must itself use the words "accept" or "agree." 131 F.4th at 154–55.

Nor does the absence of a separate checkbox create a factual dispute. The website's express assent language was tied directly to the very action Ms. Jeter performed. The law looks to that objective interaction, not to whether Ms. Jeter now recalls reading the notice or subjectively intended to accept each provision. See *Cochran,* 398 Md. at 16–17, 919 A.2d at 709–10.

Ms. Jeter's repeated use of the portal further eliminates any plausible suggestion of an accidental or incidental interaction. Vanguard's records show three separate searches on three different dates. Goldman Decl. ¶ 27. On each occasion, the portal gave the same direct notice that searching constituted agreement to the Terms of Service. *Id.* ¶¶ 15–16, 27. Each completed search independently manifested assent.

## I. Ms. Jeter's Claims Fall Within the Online Arbitration Provision.

The Terms of Service require arbitration of disputes, claims, or controversies between a user and Vanguard concerning the Terms or Vanguard's services. Goldman Decl. ¶¶ 20–21 & Ex. E. Ms. Jeter's claims arise directly from those services and from the very parking notice she accessed through the portal.

The Complaint challenges Vanguard's monitoring of the parking facility, identification of Ms. Jeter's vehicle, acquisition and use of vehicle-registration information, issuance of Ticket No. 61087, demand for payment, communications concerning the notice, and related enforcement or collection activity. Those claims concern Vanguard's services and Ms. Jeter's use of the portal to access the disputed notice. They therefore fall comfortably within the arbitration provision.

Any contention that Ms. Jeter searched for the notice merely to investigate or dispute Vanguard's conduct does not change the result. Parties frequently enter enforceable agreements while accessing services associated with an existing dispute. The objective question is whether Ms. Jeter received notice that using the search functionality constituted agreement and then chose to use it. The undisputed portal design and Vanguard's records establish both elements.

## II. The Online Agreement Provides an Independent Basis for Arbitration.

Vanguard's original Motion demonstrates that Ms. Jeter agreed to arbitrate by entering and parking at the 275 West Street facility after notice of the posted Parking Agreement. ECF No. 15 at 3–4, 7–9. The online agreement supplies an additional and independent basis for the same relief.

The Court therefore need not choose between the posted Parking Agreement and the online Terms of Service. Each independently requires arbitration. Ms. Jeter first manifested assent by parking after notice of the facility's Parking Agreement. She later manifested assent again—on three occasions—by using Vanguard's portal after being expressly advised that searching constituted agreement to the Terms of Service.

## CONCLUSION

For these reasons, and for the reasons stated in Vanguard's Motion to Compel Arbitration and Stay Proceedings, the Court should compel Plaintiff Robyn Jeter to arbitrate her claims against Vanguard on an individual basis and stay this action as to Vanguard pending completion of arbitration.

Respectfully Submitted,

By: /s/Justin M. Daniel, Esquire, (#20187)
25 Hooks Lane, Suite 210
Baltimore, Maryland 21208
(410) 547-0480
jdaniel@davidefink.com
*Attorney for Defendant Vanguard Parking Solutions, Inc.*

## CERTIFICATE OF SERVICE

I certify that on July 20, 2026, a copy of the foregoing was filed through the Court's CM/ECF system, which will send notice to all counsel of record.

/s/Justin M. Daniel