**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

JOHN SIKKING, et al. Case No. 8:26-cv-02159-PX
*Plaintiffs*
vs.

VANGUARD PARKING SOLUTIONS, INC., et al.
*Defendants*
_______________________________________________/

**DEFENDANT VANGUARD PARKING SOLUTIONS, INC.'S REPLY IN SUPPORT FOR ITS MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

Defendant Vanguard Parking Solutions Inc. ("Vanguard") files this reply in support of its motion to compel Plaintiffs John Sikking and Robyn Jeter to arbitrate their claims against Vanguard on an individual basis and to stay this action pending arbitration. In support, Vanguard states as follows.

## INTRODUCTION

Plaintiffs' Opposition doesn't establish that their arbitration agreements are unenforceable. At most, their affidavits create factual disputes about what notice the posted Parking Agreements provided—disputes that the Federal Arbitration Act requires this Court to resolve before allowing the merits of this putative class action to proceed. Four points are particularly important.

***First*, Plaintiffs' own evidence confirms the existence and appearance of the very Parking Agreements they contend they never saw.** Sikking swears that the photograph of the signage at 6831 Wisconsin is a "fair and accurate depiction" of the signage in the early-2025 timeframe and specifically identifies the Vanguard Parking Contract. Sikking Aff. ¶¶3–6. Jeter does the same for 275 West Street. Jeter Aff. ¶¶3–8. Each Plaintiff's position is therefore not that

the relevant contract sign did not exist. Their position is that they personally did not see it and that, given its location and surrounding signage, a reasonable driver would not have received niotice.

Vanguard's evidence is to the contrary. The Parking Agreements identify themselves as contracts, state that entering and parking constitute acceptance, and direct a driver who does not consent to leave. Goldman Decl. ¶¶5–13 & Exs. A–B. Whether the signs' actual size, location, visibility, and surroundings supplied reasonable notice is either resolvable in Vanguard's favor or presents a genuine factual dispute. It is not a basis simply to deny arbitration. Under controlling Fourth Circuit precedent, if "genuine disputes of material fact" exist concerning whether the parties agreed to arbitrate, 9 U.S.C. § 4 requires a trial directed to those facts before the merits proceed. *Berkeley Cnty. Sch. Dist. v. HUB Int'l Ltd.*, 944 F.3d 225, 234–35, 241 (4th Cir. 2019).

***Second,* Plaintiffs' prospective-waiver theory attacks a separate substantive provision of the 6831 Parking Contract, not the arbitration provision itself.** The arbitration provision expressly covers statutory claims and expressly provides that an arbitrator may award on an individual basis "the same damages and relief as a court," including "statutory damages." Goldman Decl. Ex. A. It therefore does not prevent Sikking from pursuing a DPPA remedy in arbitration. That materially distinguishes *Hengle v. Treppa*, 19 F.4th 324 (4th Cir. 2021). There, provisions governing the arbitration itself required exclusive application of tribal law and thereby deprived claimants of federal remedies **in arbitration**. The Fourth Circuit found those provisions inseverable because their prohibited purpose went to the "core of the agreement to arbitrate." *Id.* at 344. Nothing comparable appears here.

More fundamentally, *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006), holds that an arbitration provision is severable from the remainder of a contract as a matter of law. A contention that another contractual provision is illegal and renders the contract invalid

is for the arbitrator unless the challenge is to the arbitration provision. Plaintiffs' argument that the Parking Contract lacks a contractual severability clause therefore misses the governing FAA rule.

***Third*, Plaintiffs' website activity supplies an independent basis for enforcement and, as to Sikking, is essentially unrebutted.** Sikking does not deny that he paid both parking notices online by credit card. Nor does he deny Vanguard's evidence that the payment could not be submitted without affirmatively completing the agreement step linking Vanguard's Terms of Service. Goldman Decl. ¶¶17–19, 23–24 & Ex. D. Under *Dhruva v. CuriosityStream, Inc.*, 131 F.4th 145, 152–55 (4th Cir. 2025), clear notice that an identified electronic action constitutes assent, followed by completion of that action, establishes objective assent. Jeter likewise concedes that she used payparkingnotice.com after receiving her notice. Before performing that search, she agreed to the hyperlinked Terms of Service. Goldman Decl. ¶¶15–16, 27 & Ex. C.

Plaintiffs' scope argument overlooks language separate from the Online Terms' own arbitration provision. The historical Terms expressly provide that a user accepting them **"reaffirm[s] and ratif[ies]"** the Parking Agreement posted at Vanguard's facility, which is "fully and specifically incorporated herein, including, but not limited to, the binding arbitration clause." ECF No. 15-1 at 11. The Terms repeat that the Parking Agreement is a "collateral document," is "specifically incorporated," and that accepting the Terms "further ratifies" the user's agreement to it. *Id.* at 16. Thus, even if Plaintiffs are correct that the Online Terms' separate arbitration clause is limited to disputes regarding the website Services, acceptance of those Terms independently ratifies the broader facility arbitration agreement governing the underlying parking transaction.

***Fourth*, if the Court concludes that any material formation issue remains disputed, the required remedy is a prompt § 4 proceeding—not outright denial.** *Berkeley County* is especially clear on this point: the Fourth Circuit held that a district court was "obliged" to conduct

the § 4 trial where genuine formation disputes existed, even though "no party requested a trial." 944 F.3d at 234–35. Accordingly, the Court may compel arbitration on the present record. But if it believes testimony or additional evidence is necessary, it should hold the Motion in abeyance, permit only narrowly tailored formation discovery if necessary, promptly decide those issues under § 4, and stay merits and class proceedings against Vanguard in the interim, not deny The Motion.

**RECORD CORRECTIONS.**

Vanguard respectfully corrects several immaterial record references in its opening papers.

First, the Motion's citation to Goldman Declaration ¶29 for Jeter's Ticket No. 61087 should cite ¶25. Second, the Motion's statement that the payment-page assent gate was "continuously present" from October 2024 through Sikking's February 19, 2025 payments goes beyond the wording of Goldman Declaration ¶19; Vanguard relies only on Goldman's testimony that the assent mechanism applied to the transaction at issue and that Sikking's completed payments could not have occurred without completing the required steps. Third, the Motion's citations concerning Sikking's online assent should principally cite Goldman Declaration ¶¶15–21 and 23–24, rather than ¶¶23–26 or ¶27. Finally, Vanguard withdraws reliance on Goldman Declaration ¶27 and the Supplement to the extent they characterize two April entries as Jeter searches occurring on April 28 and April 30, 2025, and withdraws the characterization that Jeter searched on "three separate occasions." Vanguard relies here only upon the June 25, 2025 search reflected in Vanguard's records, which occurred after Jeter's June 7 parking transaction. These corrections narrow the record relied upon and require no supplemental evidence.

**ARGUMENT**

## I. PLAINTIFFS' AFFIDAVITS EITHER FAIL TO DEFEAT OBJECTIVE ASSENT OR CREATE FORMATION DISPUTES THAT MUST BE TRIED UNDER § 4.

Plaintiffs correctly observe that Vanguard bears the initial burden of establishing a binding agreement to arbitrate. Opp. at 2, 11. Vanguard has done so. Goldman testified that each relevant facility displayed a written Parking Agreement, identified the operative signage, described its acceptance language, and authenticated the agreements containing the arbitration provisions. Goldman Decl. ¶¶5–13 & Exs. A–B. Plaintiffs themselves admit parking at those facilities. They now submit competing evidence regarding notice.

Sikking testifies that the photograph depicting the signage at 6831 Wisconsin is a fair and accurate depiction, to the best of his recollection, of the signage in place in early 2025. Sikking Aff. ¶3. He specifically identifies the Vanguard sign depicted there. Id. ¶4. He then states that he personally did not see it when he parked and believes its terms could not be read without stopping and exiting a vehicle. Id. ¶¶6–7. Jeter similarly authenticates the photographed entrance and Vanguard Parking Agreement at 275 West Street. Jeter Aff. ¶¶3–4. She states that she did not see the sign when parking and contends that its location and "No Pedestrians" designation made it impractical to approach. Id. ¶¶8–9. Those affidavits do not establish the absence of an offer. They confirm the signs' existence and put into dispute the **objective adequacy of their presentation**.

Section 4 commands that "[i]f the making of the arbitration agreement ... be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. The Fourth Circuit applies a summary-judgment standard to determine whether such a trial is necessary. *Rowland v. Sandy Morris Fin. & Estate Planning Servs., LLC*, 993 F.3d 253, 258 (4th Cir. 2021). In *Berkeley County*, the district court denied arbitration after resolving disputed facts concerning assent on the papers. The Fourth Circuit vacated because § 4 required those material disputes to be resolved through trial proceedings. 944 F.3d at 234–35, 241. The court emphasized that this requirement applies even though "no party requested a trial." *Id.* at 234.

Thus, even accepting Plaintiffs' affidavits as competent Rule 56 evidence, their best procedural result is a finding that objective notice presents a genuine fact issue. It is not commencement of merits and class litigation without first resolving arbitrability.

## II. THE POSTED PARKING AGREEMENTS PROVIDE OBJECTIVE NOTICE OF CONTRACTUAL TERMS; PLAINTIFFS' CONTRARY EVIDENCE AT MINIMUM PRESENTS A FACT QUESTION.

Maryland follows the objective theory of contracts. Formation turns on whether the person alleged to be bound had reasonable notice of an offer and objectively manifested assent. *Naimoli v. Pro-Football, Inc.*, 120 F.4th 380, 389 (4th Cir. 2024); *Cochran v. Norkunas*, 398 Md. 1, 16–17, 919 A.2d 700, 709–10 (2007). The facility agreements provide evidence satisfying both elements.

The 6831 sign announces in large contrasting lettering: **"PARKING CONTRACT – PRIVATE PROPERTY"** and: **"IF YOU DO NOT CONSENT TO THIS CONTRACT, EXIT NOW."** Goldman Decl. Ex. A. Immediately below, it states that "[b]y parking here, you agree to the terms of this Contract." The face separately calls out: **"ARBITRATION: Unresolved disputes shall be resolved through binding arbitration."** *Id.* The 275 West Street sign similarly identifies itself as a **"PARKING AGREEMENT,"** states that "[b]y entering and parking in this parking facility, you agree to the terms and conditions of this Parking Agreement," and directs a driver who does not consent to "exit this parking facility and park in a different location." Goldman Decl. ¶¶11–13; Compl. ¶28. Its "NOTICE OF ARBITRATION" provides that covered disputes "shall be settled exclusively by arbitration."

Plaintiffs' reliance on *Marshall* does not establish otherwise. In *Marshall v. Georgetown Memorial Hospital*, 112 F.4th 211, 219–22 (4th Cir. 2024), the Fourth Circuit addressed an online interface in which the operative contractual provisions were available only by scrolling or

exploring beyond what the user needed to see to complete the transaction. The court emphasized that a user need not "ferret out" contractual provisions not reasonably presented.

Here, by contrast, the documents themselves identify their contractual character at the outset. The factual question is therefore whether those notices, **as physically displayed**, were reasonably presented to a driver. Plaintiffs say no. Vanguard says yes. Sikking says the sign could not be read from inside a vehicle. Jeter says the Annapolis sign was on the passenger side and near a "No Pedestrians" area. Vanguard's evidence shows the posted agreements and their prominent contractual headings. *Brant v. Parking Revenue Recovery Services, Inc.* is persuasive not because its parking lot was physically identical, but because it recognizes the ordinary proposition that parking terms can be communicated through posted signage and accepted through the act of parking. Plaintiffs' effort to distinguish *Brant* based on the number, location, and visibility of signs simply underscores that their disagreement is factual.

If the Court concludes the present photographs establish adequate notice, it should enforce the agreements now. If not, those competing facts should be tried under § 4.

## III. THE PROSPECTIVE-WAIVER ARGUMENT DOES NOT INVALIDATE SIKKING'S ARBITRATION AGREEMENT.

Plaintiffs' second argument conflates two different provisions of the 6831 Parking Contract. One provision states that a parker waives claims concerning Vanguard's acquisition and use of personal information, including DPPA claims. Goldman Decl. Ex. A. A different provision requires arbitration. That arbitration provision states:

> "ANY AND ALL DISPUTES, CLAIMS OR CONTROVERSIES BETWEEN YOU AND VANGUARD ARISING FROM YOUR PARKING AT THE FACILITY OR UNDER THIS CONTRACT," including statutory claims, are subject to binding arbitration.

*Id.* Most importantly, the arbitration clause expressly provides that:

> "AN ARBITRATOR CAN AWARD ON AN INDIVIDUAL BASIS THE SAME DAMAGES AND RELIEF AS A COURT (INCLUDING INJUNCTIVE AND DECLARATORY RELIEF OR STATUTORY DAMAGES) AND MUST FOLLOW THIS CONTRACT AND THE LAW AS A COURT WOULD."

*Id.* The arbitration mechanism therefore does not prospectively waive Sikking's DPPA remedies. It expressly preserves statutory claims and statutory damages in arbitration.

### A. *Hengle* involved an invalid limitation embedded in the arbitration mechanism itself.

That makes *Hengle v. Treppa*, 19 F.4th 324 (4th Cir. 2021), distinguishable. The arbitration provisions there required arbitrators to apply exclusively tribal law. As a result, submitting a federal claim to arbitration itself deprived the claimant of the federal statutory protections sought. *Id.* at 342–44. When the Fourth Circuit considered severability, it emphasized that the offending choice-of-law provisions went to the "essence" or "core" of the **agreement to arbitrate**. *Id.* at 344. Read as a whole, that arbitration agreement simultaneously required federal disputes to be arbitrated while ensuring that federal remedies would be unavailable in arbitration. *Id.*

Here the arbitration clause does precisely the opposite. It directs arbitration of statutory claims and authorizes the arbitrator to provide statutory damages and the same individual relief a court could provide. Plaintiffs challenge a separate substantive waiver they contend Vanguard may assert as a defense to their DPPA claim. Whatever the validity of that defense, it is not a limitation on what law the arbitrator may apply or what remedies the arbitrator may award.

### B. *Buckeye* requires the arbitration provision to be treated separately from Plaintiffs' challenge to another contractual term.

Plaintiffs' reliance on the absence of a contractual severability provision is inapposite. As a matter of substantive federal arbitration law, "an arbitration provision is severable from the remainder of the contract." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006).

Unless the challenge is directed **specifically to the arbitration clause**, the validity of the remaining contract is for the arbitrator in the first instance. *Id.* at 445–46.

*Buckeye* rejected the argument that a court could avoid arbitration because state law regarded an allegedly illegal contract as containing no "severable, or salvageable, parts." *Id.* at 446. Plaintiffs' argument here is similar. They contend that the DPPA-waiver language is unlawful and therefore makes the larger Parking Contract unenforceable. They do not identify any provision of the arbitration clause itself that prevents adjudication of the DPPA claim or its statutory remedies. That challenge belongs to the arbitrator.

*Williams v. Martorello*, 59 F.4th 68 (4th Cir. 2023), does not alter the distinction. *Williams* confirms that the prospective-waiver doctrine can invalidate a contractual provision outside a conventional arbitration clause. But it does not hold that the invalidity of one substantive provision automatically extinguishes a separate arbitration agreement contrary to *Buckeye*. Accordingly, the prospective-waiver argument supplies no basis for refusing to enforce the arbitration agreement.

## IV. PLAINTIFFS' ONLINE ASSENT INDEPENDENTLY SUPPORTS ARBITRATION.

Plaintiffs devote their website argument almost entirely to **scope**. Opp. at 17–18. They do not meaningfully contest Sikking's actual completion of the online assent process, and their scope argument overlooks the Terms' express incorporation and ratification of the relevant Agreements.

### A. Sikking affirmatively completed the online payment process.

Vanguard's evidence establishes that Sikking paid both notices by card through payparkingnotice.com on February 19, 2025. Goldman Decl. ¶¶23–24. To reach his notices, the search interface advised immediately adjacent to the search action that pressing search constituted agreement to Vanguard's hyperlinked Terms of Service. Goldman Decl. ¶¶15–16 & Ex. C.

The payment page then presented an additional assent mechanism linking the Privacy Policy and Terms of Service, and Vanguard's evidence establishes that the payment could not be successfully submitted without completing that required agreement step. Id. ¶¶17–19, 23–24 & Ex. D. Plaintiffs do not deny that Sikking completed the two payments. Nor does Sikking submit an affidavit stating that the payment proceeded without the assent mechanism described by Goldman.

*Dhruva* is controlling. There, the Fourth Circuit rejected the proposition that an operative button must itself say "I accept" or "I agree." 131 F.4th at 154–55. A "clear and conspicuous notice that a click ... will be taken as assent can do the trick." *Id.* at 154 (quoting *Marshall*, 112 F.4th at 222). Sikking's payment transaction is stronger still because the payment workflow contained an affirmative agreement step in addition to the search-page notice.

**B. Jeter's June 25 search likewise manifested assent, or at minimum creates another formation issue.**

Vanguard narrows its supplemental argument concerning Jeter and relies only on the June 25, 2025 search reflected in the existing record. That search occurred after Jeter's June 7 parking session and after issuance of the notice she sought to investigate. To retrieve the notice, the portal presented the search fields and the adjacent statement informing the user that pressing search constituted agreement to the hyperlinked Terms. Goldman Decl. ¶¶15–16, 27 & Ex. C.

Plaintiffs concede that Jeter used the website to view her notice. Opp. at 10. Under *Dhruva*, an additional checkbox is not indispensable where the interface clearly communicates that completing the identified action constitutes assent. 131 F.4th at 154–55. If Jeter contends that the interface was materially different on June 25 or that the historical workflow did not display the

notice Goldman describes, that would again present a historical factual issue under § 4. It would not justify resolving the dispute against Vanguard without a § 4 trial.

### C. Plaintiffs' scope argument ignores the Terms' express ratification and incorporation of the Parking Agreement.

Plaintiffs emphasize that the Online Terms define the "Services" as use of Vanguard's website to pay Parking Charges and that their claims are not principally about website functionality. Opp. at 17–18. That argument reads only the Online Terms' stand-alone arbitration clause and stops there. The same Terms expressly provide:

> "YOU FURTHER ACKNOWLEDGE THAT BY AGREEING TO THESE TERMS THAT YOU REAFFIRM AND RATIFY YOUR AGREEMENT TO THE PARKING AGREEMENT POSTED AT VANGUARD PARKING'S PARKING FACILITIES ... WHICH IS FULLY AND SPECIFICALLY INCORPORATED HEREIN, INCLUDING, BUT NOT LIMITED TO, THE BINDING ARBITRATION CLAUSE."

Goldman Decl. Ex. E, ECF No. 15-1 at 11. Under the separate heading "Parking Agreement," the Terms repeat the same ratification language. *Id.* at 16. They further specify that acceptance "does not replace or amend" the Parking Agreement. *Id.* Thus Vanguard need not persuade the Court that every DPPA or collection allegation independently falls within the narrower phrase "regarding these Terms or the Services." Online assent has a separate contractual consequence: it **ratifies the facility Parking Agreement and specifically incorporates its arbitration clause.**

The facility clauses are broader. The 6831 agreement encompasses "any and all" disputes with Vanguard arising from parking at the facility or under the contract, expressly including statutory claims. Goldman Decl. ¶10 & Ex. A. The 275 agreement encompasses "[a]ny dispute or controversy arising under or in connection with this Agreement," except a claim for injunctive relief. Goldman Decl. ¶13 & Ex. B.

Plaintiffs' claims concern precisely the conduct those facility agreements address: monitoring the parking session, identifying the vehicle, obtaining owner information, issuing a notice, calculating and demanding Parking Charges, and collecting those amounts.

For Sikking there is an additional answer. Counts II and III expressly seek recovery of the money Plaintiffs allegedly "paid" Vanguard in response to its collection activity. Compl. ¶¶72, 77. Sikking's payments were made through the website payment Services. His claim seeking return of those very payments cannot reasonably be characterized as wholly unrelated to his use of those Services. Accordingly, online assent reinforces enforcement of the facility arbitration agreements and, as to Sikking's payment-related claims, also falls within the Online Terms themselves.

## V. THE FACILITY ARBITRATION PROVISIONS COVER THE CLAIMS PLEADED AGAINST VANGUARD.

The Opposition does not identify a scope limitation in the 6831 facility clause. That clause covers all disputes including claims based on contract or statute. Goldman Decl. Ex. A.

Sikking's DPPA claim arises from Vanguard's recording and use of information associated with his parking sessions. His MCDCA and MCPA claims challenge the resulting notices, asserted Parking Charges, collection activity, and amounts he paid. All arise directly from parking at 6831 Wisconsin.

The 275 agreement similarly covers "[a]ny dispute or controversy arising under or in connection with" the agreement. Jeter's claims arise from the June 7 parking session, Vanguard's monitoring of that session, acquisition of vehicle-owner information, issuance of the resulting notice, and ensuing demand for payment.

The 275 clause excepts "a claim for injunctive relief." Vanguard does not ask the Court to rewrite that exception. But the Complaint's actual causes of action demand damages, class

certification, interest, fees and costs, and other appropriate relief. Compl. Counts I–III. Plaintiffs do not plead a distinct count seeking injunctive relief against Vanguard. Accordingly, the claims now pleaded fall within the clause. If Plaintiffs later pursue a specific injunctive-relief claim, the Court can give that exception its ordinary effect without refusing arbitration of the covered claims.

## VI. COVERED CLAIMS MUST PROCEED INDIVIDUALLY, AND PROCEEDINGS AGAINST VANGUARD MUST BE STAYED.

The 6831 Parking Contract expressly provides that claims may not proceed as a class action. Goldman Decl. ¶¶9–10 & Ex. A. The Online Terms likewise require individual proceedings. The 275 agreement does not contain affirmative consent to class arbitration. Under *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 559 U.S. 662, 684 (2010), and *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 184–89 (2019), class arbitration cannot be imposed from silence or ambiguity. The fundamental differences between bilateral and class arbitration require an affirmative contractual basis for concluding that the parties consented to class proceedings.

Accordingly, any claims compelled under the 275 agreement must likewise proceed bilaterally. Once the Court determines that claims against Vanguard are referable to arbitration, § 3 requires the requested stay. *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024).

## VII. IF THE COURT FINDS A GENUINE FORMATION DISPUTE, IT SHOULD HOLD THE MOTION IN ABEYANCE AND PROMPTLY CONDUCT THE § 4 PROCEEDING.

Vanguard submits that the Court may compel arbitration on the existing record. Plaintiffs admit the parking transactions. Their affidavits authenticate the signage they call inadequately presented. Sikking does not deny his online payments. Plaintiffs concede subsequent website use. The written agreements expressly identify the conduct constituting acceptance.

But if the Court concludes that Plaintiffs' evidence creates a genuine dispute as to formation, *Berkeley County* controls the procedure.

The Court should hold the Motion in abeyance and promptly determine only those formation facts necessary to arbitrability, including, if necessary: the presentation and visibility of the Agreements at the relevant facilities; the online interface and assent process; and the search interface on the website used by Jeter. Any discovery should be narrowly limited to those formation issues. There is no reason to proceed with merits or class discovery against Vanguard while the Court determines whether those claims are arbitrable. Arbitrability must be resolved first.

**CONCLUSION**

For the foregoing reasons and those stated in Vanguard's Motion and Supplement, the Court should compel Plaintiffs John Sikking and Robyn Jeter to arbitrate their claims against Vanguard on an individual basis and stay this action as to Vanguard until after arbitration.

Alternatively, if the Court concludes that Plaintiffs have produced evidence creating a genuine dispute concerning a material issue of formation or assent, the Court should hold the Motion to Compel Arbitration in abeyance, permit only such limited discovery, promptly conduct the trial required by 9 U.S.C. § 4, and stay all merits and class proceedings against Vanguard until that threshold issue is resolved.

Respectfully Submitted,

By: /s/Justin M. Daniel, Esquire, (#20187)
David E. Fink, Esquire, (#11526)
25 Hooks Lane, Suite 210
Baltimore, Maryland 21208
(410) 547-0480
jdaniel@davidefink.com
DavideFink@yahoo.com
*Attorneys for Defendant Vanguard Parking Solutions, Inc.*

**CERTIFICATE OF SERVICE**

I certify that on August 24, 2026, a copy of the foregoing was filed through the Court's CM/ECF system, which will send notice to all counsel of record.

/s/Justin M. Daniel